THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KEITH EDDINGTON *et al.*, Defendants-Appellants.

First District (1st Division)   No. 82—304

Opinion filed September 12, 1983.

954

Donna Finch, of State Appellate Defender's Office, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Paula Carstensen, and Thomas Wood Flynn, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendants Keith Eddington and Gary Hart were found guilty in a jury trial of kidnaping and unlawful restraint. They were both sentenced to an extended term of 12 years for kidnaping. On appeal, defendants raise the following issues: (1) whether the jury received extraneous prejudicial information when several jurors saw a list of additional charges pending against defendants posted outside the courtroom; (2) whether testimony of unrelated criminal activity was improperly admitted at trial; (3) whether the trial court erred in refusing to allow the defense to impeach a State witness with prior inconsistent statements; (4) whether the trial court erred in giving to the jury a non-IPI instruction on the secret confinement element of the kidnaping charge; (5) whether prosecutorial misconduct during closing argument denied defendants a fair trial; and (6) whether defendant Eddington was eligible for an extended sentence.

No issues are raised concerning the sufficiency of the evidence.

Barbara Montley testified that on June 6, 1981, at approximately 5 p.m., she and her former boyfriend, Warren Hardwick, were at Miller's Meadow, a forest preserve in Maywood, Illinois. Montley's cur-

rent boyfriend, Alvin Daniels, arrived and an argument began between Hardwick and Daniels. A crowd of people gathered to listen to the argument. Montley testified that two young men stepped out of the crowd and one said to Daniels, "Well, if he took your girlfriend, why don't you just let him have her." Montley identified the man that spoke as defendant Hart and the other man as defendant Eddington. She testified that she did not know the men nor did she think that Hardwick and Daniels knew them.

After the argument broke up, Montley and Hardwick left Miller's Meadow in Hardwick's car. While they were waiting at a stop light about a block from the forest preserve, a man that Montley identified as Eddington approached the passenger side of the car. He told Montley that he was a cousin of her boyfriend and was going to take her to him. Montley testified that Eddington then grabbed her by the arm and pulled her out of the car. She was dragged across the roadway and pushed into a "big black car." There were three males already in the car, Hart who was driving and two others.

After driving around Maywood for 15 minutes, the two other males were dropped off. One of the males, who was sitting in the back seat, had to climb over the front seat to get out of the car because the rear door of the passenger side was not operative. Montley and Eddington were left sitting alone in the backseat. Hart then drove past a park where defendants waved to several friends playing basketball. They then continued on to the Eisenhower Expressway. Montley testified that at this point she began to scream. Eddington told her that they would take her home but she had to be quiet. She began fighting with Eddington and, then, she jumped out of the rear window of the car on the passenger side. She landed on the expressway and rolled across a lane of traffic to the shoulder of the road.

Frank Kolar testified that on June 6, 1981, at about 6 or 6:30 p.m. he and his wife were driving east on the Eisenhower Expressway when he saw a woman leap from the window of a moving car. At the time the car, a black Cadillac, was traveling about 50 miles per hour in the right hand lane in heavy traffic. Kolar saw Montley fall on her hands and then roll and skid across the center lane and the left lane of traffic and onto the left shoulder. Several cars swerved to avoid her and accidents ensued. Kolar pulled over to the side of the road and went to assist Montley. Her clothes were ripped and shreaded by the pavement. Kolar testified that the skin was completely off the palms of her hands and her back was badly scratched. Kolar flagged down another car and the driver of that car called the police. A Maywood police officer arrived and took Montley to a hospi-

tal where she was treated.

Warren Hardwick testified that on the day in question he was with Montley at Miller's Meadow when Daniels arrived. Hardwick testified that Montley argued with Daniels and that he did not notice anyone approach or say anything to them. Hardwick also stated that he did not pay much attention to the man who took Montley out of his car and that although the man grabbed Montley's hand, she did not struggle. Hardwick also testified, however, that the man had gotten out of a four-door black Cadillac.

Officer Fernando Reyes of the Cook County Forest Preserve Police testified that he interviewed Montley at the hospital. Four days later, on June 10, at approximately 11 p.m., Reyes was on patrol in a squad car at Miller's Meadow and was assigned to close the park. Reyes noticed a black Cadillac parked in the forest preserve parking lot. As he approached the car he saw someone jump from the back seat into the front seat and exit the car on the passenger side. Reyes observed that the man was pulling up his pants. Reyes then got out of the squad car and shone his flashlight into the backseat. He observed a female and a male. The male was pulling up his pants and the female was crying. At trial, Reyes identified Hart as the first man who exited the car and Eddington as the man in the backseat of the car. Hart was unable to produce a driver's license at Officer Reyes' request and there was no record of a license being issued to Hart under the several names and birthdates he gave Reyes. Reyes placed defendants under arrest. The following day, in a lineup conducted at Maywood courthouse, Montley identified defendants as her abductors.

On cross-examination, Reyes testified that he arrested defendants that night and charged them with an offense other than the offense against Montley. In response to a specific defense question, Reyes stated that he had testified against defendants with respect to the other offenses and that the matter was dismissed. The State objected and in sidebar informed the court that although the charges were dismissed at a preliminary hearing, the grand jury did return indictments charging defendants with rape. The court ruled that defendants had opened the door to bring out the fact that defendants had been charged with rape but the State did not clarify the matter. Additionally, the defense handed Reyes his police report of defendants' arrest and asked Reyes to identify it. Reyes replied, "It is a rape report." Reyes' answer was striken, and the jury was instructed to disregard it.

Stephanie Eddington, defendant Eddington's sister, testified that defendant was at home until about 4 p.m. on June 6. Stephanie testi-

fied that when she went to a park near their home at about 6 p.m. she saw Eddington playing basketball with some friends. Reginald Williams testified that on the day in question he played basketball with Eddington from approximately 4:30 to 8 p.m.

Alma Sanders testified that on June 6 Hart came to her home at about 1 p.m. to pick up her daughter Nanette. Nanette and Hart spent the day together at Hart's home. Mrs. Sanders testified that she called them and spoke to Hart at about 6 and 7:45 p.m. Both times Mrs. Sanders told Hart that it was time to bring Nanette home. Hart brought her home at about 8 p.m. Nanette Sanders testified that she spent the day with Hart at his home.

■ Defendants first contend that the jury verdict must be vacated because during trial jury members saw a sheet of paper posted outside the courtroom listing additional charges pending against defendants. At a hearing on defendants' motion for a new trial, a former jury member, John Stepney, testified that he had seen these papers while on a lunch recess from trial. Stepney testified that during deliberations he and several other jury members briefly discussed the charges pending against defendants that they had seen on the list. When asked if he could recall what the charges were, the juror answered, "I believe it was deviate sex, and rape and I don't know exactly all of them but I know there were about eight on one and six or seven on the other." The juror also testified that his decision was not affected by the fact that other charges were pending against defendants. On cross-examination, Stepney stated that two weeks after trial he was at a party at defendant's home and told defendant's father that he was a juror in his son's trial. Several days later, Stepney received a call from the defense attorney. In response to defense counsel's question about the jury deliberations, Stepney mentioned that the jurors had seen the posted list. The trial court refused to consider the testimony of Stepney to impeach the jury verdict and denied defendants' motion for a new trial.

Defendants argue that the trial court misapplied the standard for attacking a jury verdict enunciated in *People v. Holmes* (1978), 69 Ill. 2d 507, 372 N.E.2d 656. Defendants argue that Stepney's testimony shows that the jury was exposed to highly prejudicial information which defendants had no opportunity to refute. Defendants assert that the repulsion felt by many toward the offenses of rape and deviate sexual assault suggest the likelihood that information of these charges was highly prejudicial to defendants. The State contends that if the jurors saw the list, it was not so prejudicial as to require reversal since the jury had already heard the same information when the

arresting officer testified to the circumstances surrounding defendants' arrest.

In *People v. Holmes* (1978), 69 Ill. 2d 507, 372 N.E.2d 656, a crucial issue at trial was the identification of the defendant by comparison of heel prints left at the scene of the crime to those of defendant. A police officer testified to the similarity of the prints in that both contained a crack and the insignia "Florsheim." At a post-trial hearing, the defendant presented testimony that several jurors had made an independent visit to a Florsheim shoe store to observe the designs of shoe heels and had reported their findings to the jury during deliberations. The supreme court held that the testimony of a juror may be used to impeach the verdict of the jury only in those cases where the juror is testifying to whether extraneous prejudicial information was improperly brought to bear upon any juror. Evidence relating to the effect of such influence on the mental processes of the jury members is inadmissible.

The *Holmes* court held that it first must be determined whether any extraneous prejudicial information was improperly brought to the jury's attention or any improper outside influence brought to bear on a juror. Second, the court must consider whether the conduct involved such a probability that prejudice will result that the trial is to be deemed inherently lacking in due process. The *Holmes* court held that, under the circumstances of that case, defendant should receive a new trial since he was neither confronted with this crucial identity evidence nor given an opportunity to refute it at trial.

Following *Holmes*, it has been held that a new trial was not mandated when the extraneous information received by the jury consisted in a chance meeting between the prosecutrix in a rape case and several members of the jury where there was not evidence of conversation between the parties. (*People v. Chatman* (1977), 52 Ill. App. 3d 631, 367 N.E.2d 1050.) The court has also found that a defendant is not entitled to a new trial in a case involving a charge that defendant filed a fictitious injury claim when several jurors who were employees of the same company as defendant discussed their own recollections of the site of defendant's alleged injury. (*People v. Wurster* (1980), 83 Ill. App. 3d 399, 403 N.E.2d 1306.) *Wurster* held that the description of the scene was strictly a collateral issue and too insignificant to justify reversal of defendant's conviction.

The State contends that the present case is analogous to *People v. Hayes* (1979), 70 Ill. App. 3d 811, 388 N.E.2d 818. In *Hayes* members of the jury saw photographs of the murder victim that the State's Attorney was holding while examining a witness. The trial court had

previously ruled that the pictures were too gruesome to be shown to the jury. On appeal the court held that since several witnesses had testified to the condition of the victim's body when it was discovered, the pictures did not provide the jury with any crucial information which defendant had not been confronted with at trial. 70 Ill. App. 3d 811, 828, 388 N.E.2d 818, 831.

It is significant that in the case at bar evidence of defendants' other criminal activity was provided to the jury from the witness stand. After Officer Reyes' testimony on direct and on cross-examination, the jury was informed that defendants had been arrested and charged with other crimes resulting from their activity on June 10. Also, the jury was instructed that evidence of defendants' involvement in an offense other than that charged was to be considered only for the limited purpose for which it was received. As in *Hayes*, the posted list did not present the jury with crucial information with which defendants neither had been confronted at trial nor had an opportunity to refute.

■ The second contention raised by defendants is that they were denied their due process rights to a fair trial by the introduction of Officer Reyes' testimony on the circumstances surrounding defendants' arrest. The trial court found the officer's testimony to be admissible on the issue of intent, and at the close of trial gave the jury the appropriate limiting instruction on other crimes evidence.

Testimony of other criminal activity is admissible if relevant to demonstrate absence of mistake, intent, motive, design, plan, identity or *modus operandi*. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) Furthermore, evidence of unrelated criminal activity is admissible when relevant to police investigation of the crimes charged and when it is an integral part of the narrative of a defendant's arrest. (*People v. Davis* (1981), 93 Ill. App. 3d 187, 416 N.E.2d 1179; *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238.) The supreme court has stated that "evidence of other offenses is admissible if it is relevant for any purpose other than to show the propensity to commit crime." *People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821, 824.

Defendants contend, however, that the testimony elicited by the State exceeds these exceptions. The State asserts that the officer's testimony was highly relevant to explain the circumstances of defendants' arrest and to show intent and *modus operandi*. Defendants were arrested in the same forest preserve where they allegedly abducted the victim, in an automobile matching the description the victim had given and five days after the victim's abduction. Under these facts

the evidence of defendants' arrest was admissible for a purpose other than to show defendants' propensity to commit a crime. *McKibbins.*

■■ Defendants also argue that the State improperly attempted to impeach Nanette Sanders, an alibi witness for Hart, by suggesting that Hart had committed other crimes. Sanders testified that she remembered the day of June 6 because her sister had graduated two days earlier. The State attempted to impeach this testimony with statements the witness had made to an investigator claiming that she remembered that date because Hart had spent the previous night in jail. The State contends that they are entitled to impeach a witness by her prior inconsistent statements which tended to disprove alibi testimony. Since Sander's statement was relevant for impeaching her testimony at trial, the trial court did not err in admitting this evidence. *McKibbins.*

■ Defendants next contend that the trial court committed reversible error in refusing to allow the defense to impeach the victim's testimony that she was in Hardwick's car at the time of her abduction. Defendants wanted to show that she told Officer Reyes and an investigator that she was walking at the time she was seized. The State contends that this issue is waived for the purpose of review because defendants failed to raise it in their post-trial motion. Further, the State argues that the defense counsel did not lay the proper foundation for impeachment during his initial cross-examination of the victim and was not entitled to a second opportunity to establish the foundation when the victim was recalled for cross-examination on an unrelated point.

Defendants' failure to raise this issue has waived consideration of it upon appeal. (*People v. Irwin* (1965), 32 Ill. 2d 441, 207 N.E.2d 76.) Further, the error, if any, was not so prejudicial as to constitute plain error which denied defendants their right to a fair trial. Reyes testified to the victim's impeaching statement. Also his police report and the investigator's report, both of which contained the impeaching statement, were read into the record. *People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409.

■■ The fourth contention raised by defendants is that the trial court erred in giving an instruction to the jury that is not found in the Illinois Pattern Jury Instructions (IPI), Criminal (1968). An element of the offense of kidnaping is secret confinement. (Ill. Rev. Stat. 1981, ch. 38, par. 10—1.) The instruction at issue read, "Confinement in an automobile may constitute secret confinement." Defendants argue that this instruction was confusing to the jury and that even the trial judge initially indicted confusion as to its meaning. Defendants

further argue that the IPI instruction on kidnaping is accurate and sufficiently reflects the law and, therefore, only the IPI instruction should have been given. The State argues that the concept of secret confinement is not adequately covered by the IPI instruction and is not a matter of common knowledge so the non-IPI instruction was helpful to the jury.

The IPI instruction states that for the offense of kidnaping the State must prove:

"*First*: That the defendant acted knowingly; and

*Second*: That the defendant, by force or threat of imminent force, carried _____ from one place to another place; and,

*Third*: That when the defendant did so he intended secretly to confine _____ against her will." IPI Criminal No. 8.02.

The trial court, in its discretion, may give a non-IPI instruction when the pattern instructions do not adequately state the law. (*People v. Blackwell* (1979), 76 Ill. App. 3d 371, 379, 394 N.E.2d 1329, 1336; 87 Ill. 2d R. 451(a).) There is no question that the instruction is an accurate statement of the law. (*People v. Bishop* (1953), 1 Ill. 2d 60, 114 N.E.2d 566, *cert. denied* (1953), 346 U.S. 916, 98 L. Ed. 412, 74 S. Ct. 278; *People v. Hamil* (1974), 20 Ill. App. 3d 901, 314 N.E.2d 251.) Since the instruction was phrased in the conditional tense, the instruction did not remove from the jury's consideration the element of secret confinement. When viewed in the context of the entire charge, it cannot be said that the trial court abused its discretion in giving the non-IPI instruction at issue here. (See *People v. Griffin* (1982), 113 Ill. App. 3d 184, 446 N.E.2d 1175.) Further, any error in so instructing the jury is harmless in light of the overwhelming evidence of defendants' guilt. *People v. Jones* (1979), 81 Ill. 2d 1, 9, 405 N.E.2d 343, 346.

■ Defendants next maintain that the cumulative effect of the State's improper remarks during closing argument was so prejudicial as to deny them their right to a fair trial. Defendants concede, however, that they failed to mention the alleged errors in their post-trial motion, but they ask this court to consider the merits of their arguments under the plain error exception to the waiver rule. (*People v. Jackson* (1981), 84 Ill. 2d 350, 358-59, 418 N.E.2d 739, 743.) When a defendant fails to make a timely objection at trial or in a post-trial motion, irregularities in the closing argument complained of on review are ordinarily deemed waived. (*Jackson.*) If, however, the State's improper argument was so prejudicial as to prevent a defendant from receiving a fair trial, a reviewing court will consider whether substantial error occurred. (*Jackson.*) In the case at bar, several of the al-

leged improper comments may affect substantial rights of defendants and warrant consideration by this court.

Defendants argue that in its rebuttal argument the prosecutor commented on defendants' failure to testify. A review of the record reveals that the comments were in response to a statement made by the defense attorney in his closing argument. The defense attorney stated that all his clients could tell him about the case was that they did not know the victim and had never before seen her. It has been held that where a prosecutor's comments on defendant's failure to testify are in the form of a response to defense counsel's comments in closing argument, "defendant may not predicate error on a response by the prosecutor which he himself provoked." (*People v. Carruthers* (1974), 18 Ill. App. 3d 255, 267, 309 N.E.2d 659, 668; *People v. Conner* (1976), 42 Ill. App. 3d 234, 355 N.E.2d 662.) The comments complained of did not exceed the bounds of proper rebuttal to the closing argument of the defense.

■ Defendants also allege that the State improperly commented on the fact that only one of the several potential alibi witnesses testified for Eddington. Alibi witness Reginald Williams named several other men who were playing basketball with Eddington and himself at the time of the crime. When the defense interjects the existence of potential alibi witnesses into the case, the prosecutor may comment on the fact that these potential alibi witnesses did not testify. (*People v. Blakes* (1976), 63 Ill. 2d 354, 348 N.E.2d 170; *People v. Smylie* (1981), 103 Ill. App. 3d 679, 431 N.E.2d 1130.) Any error committed by the State in additionally claiming that these potential witnesses did not testify because they would not perjure themselves was harmless.

■ We have reviewed the remaining comments complained of and find that they did not affect defendants' substantial rights. The prosecutor's comment on the State's burden of proof is very similar to a comment found to be harmless error in *People v. Ayala* (1981), 96 Ill. App. 3d 880, 883-84, 422 N.E.2d 127, 130. Also, the State did not commit reversible error in referring to defendants as "predators." (See *People v. Terrell* (1975), 62 Ill. 2d 60, 64, 338 N.E.2d 383, 385.) The evidence against defendants was strong. It cannot be said that the cumulative effect of these comments was a material factor in defendants' conviction and that the verdict would have been any different if none of the alleged improper comments had been made. *People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771, *cert. denied* (1970), 396 U.S. 1016, 24 L. Ed. 2d 507, 90 S. Ct. 578.

■ The final contention raised by defendants is that the trial court abused its discretion in sentencing defendant Eddington to an

extended-term sentence of 12 years. Eddington argues that he was not eligible for an extended term under the prior conviction portion of that statute (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(1)), because his only prior conviction was the result of a guilty plea. Defendant's argument is without merit. The Unified Code of Corrections defines conviction as a judgment of conviction or a sentence entered either upon a finding of guilty or upon a plea of guilty. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—1—5; *People v. Robinson* (1982), 89 Ill. 2d 469, 433 N.E.2d 674.) Under the plain meaning of the statute, Eddington is eligible for an extended term based upon his prior conviction. See *People v. Grier* (1980), 90 Ill. App. 3d 840, 413 N.E.2d 1316.

■■ Eddington also argues that the trial court abused its discretion in sentencing him because the court allegedly did not consider his potential for rehabilitation and other mitigating factors in his background. A reviewing court will not reduce a defendant's sentence absent a showing that the trial court abused its discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Before rendering its sentencing decision, the trial court heard the arguments of counsel in aggravation and mitigation. It should be noted that at the time of this offense, Eddington was on a felony probation following a conviction for aggravated battery and burglary. In light of his criminal record and the seriousness of the present offense, the trial court did not abuse its discretion in sentencing Eddington to 12 years' incarceration.

■■ Additionally, defendants contend, and the State agrees, that the judgment order incorrectly reflects convictions for both unlawful restraint and kidnaping. The trial court ruled that the unlawful restraint conviction merged into the kidnaping conviction and sentenced defendants only on the kidnaping conviction. Therefore, the judgment order should be amended to reflect only a conviction and sentence for kidnaping. *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477.

For the foregoing reasons, defendants' convictions and sentences for kidnaping are affirmed. Defendants' convictions for unlawful restraint are vacated.

McGLOON and GOLDBERG, JJ., concur.