THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE DUNCAN, Defendant-Appellant.

Third District    No. 80-399

Opinion filed July 10, 1981.

Jerry Serritella, of Peoria, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

After a jury trial, defendant was convicted of murder and sentenced to a 40-year term. In a post-trial motion, defendant claimed that his attorney was operating under a conflict of interest that denied him the

effective assistance of counsel. He asks for a new trial. Alternatively, he asks that his sentence be reduced. No other issues are raised.

What are the facts? On May 19, 1980, defendant, George Duncan, hired Attorney Dorian LaSaine to defend him in this cause. At that time, and prior thereto, Mr. LaSaine was the political campaign manager for Joseph Gibson, an assistant Peoria County State's Attorney. Mr. Gibson was a candidate for the office of Peoria County State's Attorney. Gibson and LaSaine were close personal friends and had professional encounters in criminal cases. In his political campaign, Mr. Gibson marketed himself as a prosecutor with a fervent anticrime posture. He prosecuted George Duncan.

■■ Before trial the circuit judge was informed of the association of the prosecutor and defense counsel. He summoned Mr. Duncan to the bench in the presence of both attorneys and apprised him of the possibility of conflicting interests. He explained how such a conflict, on Mr. LaSaine's part, could harm his defense. Then the following exchange transpired:

"THE COURT: Do you have any questions that you want to ask me about this problem that I'm discussing with you?

DEFENDANT DUNCAN: Well, yes, sir. I have complete confidence in Mr. LaSaine, but I didn't know that he was campaign manager.

THE COURT: Uh-huh.

DEFENDANT DUNCAN: I said I knew that they was acquainted, but I didn't know he was campaign manager for Mr. Gibson.

THE COURT: Uh-huh.

DEFENDANT DUNCAN: But I have complete confidence in him."

Finally the trial judge asked:

"THE COURT: * * * And I'm asking you now, at this time, knowing what I have said to you and understanding what I've said to you, do you wish Mr. LaSaine to continue to represent you in this case?

DEFENDANT DUNCAN: Yes, sir.

THE COURT: Okay. And you understand that you will be giving up any right that you may have at a later time to complain of Mr. LaSaine's representation of you for the reason that there was a conflict of interest because he is involved with Mr. Gibson and Mr. Gibson's political campaign?

DEFENDANT DUNCAN: Yes."

Following this exchange, the judge allowed the trial to proceed with Mr. LaSaine continuing to act as the defendant's attorney. We think that the trial judge acted properly under the circumstances. These circumstances, however, should be defined. Mr. LaSaine was the defendant's

private hired counsel. The defendant was fully informed as to the conflict of interest situation. The defendant affirmatively stated that he wanted to continue with Mr. LaSaine's services in the case. No objection was raised by the defendant until after his conviction when he filed a post-trial motion. There is no suggestion that Mr. LaSaine's services in the case were deficient in any way. No issue is raised on the pleadings. No issue is raised concerning any other aspect of the trial. The verdict is not challenged save on the basis of this one issue.

Since the defendant fully understood the situation and advised the judge that he wanted to continue with Mr. LaSaine's services, the question must be asked, what choice did the trial judge have at that point? Should the judge *sua sponte* have removed Mr. LaSaine from the case? We think not. The defendant had hired Mr. LaSaine to represent him. The defendant chose him. The defendant wanted him to stay with the case. Certainly a defendant has a right to counsel of his own choosing. In fact, had the judge forced Mr. LaSaine out of the case, we would no doubt be considering that precise point on appeal instead of the one that is now before us.

It is not inconceivable that the defendant may have sensed an advantage by employing Mr. LaSaine. Maybe he thought the employment of Mr. LaSaine would get him a better deal because of the connection. If he did entertain such thoughts, he was wrong.

A thorough review of the record indicated that a vigorous and effective prosecution was undertaken and that the defendant received an equally effective and vigorous defense. The major impediment suffered by the defendant in this case was that he was guilty and the proof was evident. That aspect of the case turned out to be an insurmountable handicap.

■■ So far as the public is concerned, the appearance in the case of the candidate for state's attorney on one side and his campaign manager on the other presents an unfortunate visage. Though propriety is not damaged in fact, its appearance is. To preserve the appearance of propriety, it would be easy to suggest that it would have been better if one of the two attorneys had gotten out of the case. The reality suggests, however, that Mr. Gibson, by virtue of his familiarity with the case and his pretrial preparation, was uniquely qualified to handle the prosecution. Mr. LaSaine, on the other hand, was defendant's chosen counsel. The public would not be served by sacrificing defendant's right to counsel of his choice to the phantasmagoria of the appearance of impropriety. Neither would the public be served by removing a prepared and seasoned prosecutor from the case. It is simply an unfortunate situation that could not be avoided in these unique circumstances.

■■ Finally, to follow defendant's theory would mean that a defendant

could premeditatedly manipulate the posture of his case so as to automatically get two trials. The first trial would admittedly and knowingly be undertaken with hired counsel possessing a supposed conflict of interest. The defendant might be acquitted at that trial. If he should lose, however, he would then be in a position to get a trial *de novo* with new counsel because his first counsel was operating under the cloud of a conflict of interest. Such practice would constitute an abuse of the administration of justice. The word is waiver. The defendant knowingly and intentionally waived his right to claim error for the conflict of interest issue in this case.

■■ Defendant's claim of excessive sentence is also without merit. A sentence imposed within statutory limits will not be reduced merely because we, as a reviewing court, might have imposed different punishment. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) Primary components in fixing a just sentence are the gravity of the offense and circumstances of its commission. The trial judge, after hearing the witnesses and arguments in aggravation and mitigation, concluded the rehabilitative potential of the defendant was outweighed by the brutality of the murder. The trial court considered the defendant's history and found in it nothing compelling to offset the wanton cruelty which this murder entailed. These considerations were legal and proper. No abuse of discretion occurred.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY and STOUDER, JJ., concur.