THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
FREDERICK L. McKOWN, Defendant-Appellant.

Third District    No. 80-361

Opinion filed January 28, 1982.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Thomas J. Homer, State's Attorney, of Lewistown (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

The defendant, Frederick L. McKown, appeals from his aggravated battery conviction following a jury trial in the Circuit Court of Fulton County. The circuit court sentenced the defendant to 2 years probation conditional upon serving 14 days' imprisonment and payment of $500 in restitution. The issues presented on appeal are whether a conflict of interest existed by virtue of defense counsel's relationship with the Attorney General's office and whether the defendant knowingly and intelligently waived the conflict of interest. We affirm.

The defendant was initially represented by the Fulton County public defender, who withdrew because of a conflict of interest arising from his representation of the two co-defendants in the case. Attorney Ronald J. Weber then entered his appearance on behalf of the defendant. But Weber, who was privately retained, also presented a potential conflict of interest in that a member of his firm was then employed as a special assistant Attorney General for condemnation litigation. Prior to trial, Weber informed the defendant of the existence of the potential conflict and, pursuant to section 5 of the Attorney General's internal code of conduct, attempted to gain his client's written waiver of the conflict by means of the following preprinted form:

*"ATTORNEY'S DISCLOSURE OF CONFLICT OF INTEREST*

You are hereby informed that Ronald Weber and C. Eugene Taylor, members or associates of the law firm of Froehling, Taylor & Weber are Special Assistant Attorneys General for condem-nation. The Illinois Courts have ruled that where a defendant in a criminal case is represented by an attorney who is a Special Assistant Attorney General for the handling of any matters, whether civil or otherwise, there is a conflict of interest. That conflict bars the attorney from acting for the defendant unless the defendant waives it freely upon a full disclosure of the facts. We are now making that disclosure so that you can, if you choose, waive the conflict and retain us as your lawyer.

The conflict arises from the commitment of every Special Assistant Attorney General to the People of Illinois to seek enforcement of the law, and it exists even though a particular Special Assistant may never be employed in any criminal proceeding on behalf of the State. In any criminal case in Illinois, the Attorney General's office may be called upon to aid in the prosecution. Although neither Ronald Weber nor C. Eugene Taylor are likely to be called upon to represent the State in your case or in any other criminal proceeding, nonetheless you should be aware that the courts have held that because of their relationship with the Attorney General a conflict of interest exists. You are entitled to be informed about that conflict so that you can determine whether it might or might not be detrimental to you.

Dated:   May   , 1980.


s/ Ronald Weber."

The waiver form involved is as follows:

*"DEFENDANT'S RECEIPT AND WAIVER*

I, Frederick McKown, being a defendant in the above-entitled action, acknowledge receipt of a copy of the above disclosure. I have read it and I understand that my lawyers, because of their position with the Attorney General's Office do have commitments to the People of Illinois generally to seek enforcement of the law and could therefore have other interests than mine as they work on my case. I am satisfied that the firm of Froehling, Taylor & Weber, including Ronald Weber and C. Eugene Taylor, will represent me fairly and competently in the above-entitled action and I hereby freely consent to their doing so. I hereby waive any right that I may now have, or have had, or may hereafter have, to claim that I was harmed or not fairly or competently represented because of any

conflict of interest by reason of the matters and things set forth above or because said firm or any member of associate of the firm is now a Special Assistant Attorney General.

Dated: May    , 1980.

> s/ Fred McKown
> Defendant."

At a pretrial hearing held to apprise the court of the potential conflict and the defendant's purported waiver, the following colloquy took place:

"BY MR. WEBER: Your Honor, I would at this time like to state for the record that my office represents the Attorney General's Office, specifically Gene Taylor is an Assistant Attorney General for the purpose of condemnation, and I believe the law now provides that pursuant to our representation of the Attorney General's Office, we could be called upon to do appellate work for the State's Attorney's Office, and pursuant to that, we are required to disclose this to my client, Mr. McKown, which I have previously done; that that potential conflict does exist, and while I feel that in no way would it affect my representation of him, I do feel that this disclosure should be made in open court; and Mr. McKown has suggested to me privately that he has no objections, and at this time I would ask him if he would have any objections.

BY MR. MCKOWN: No sir.

BY THE COURT: Do you fully understand what your counsel is telling you?

BY MR. MCKOWN: Somewhat. I don't know for sure.

BY THE COURT: Well, his office is retained and represents the Attorney General's Office. The Attorney General's Office of the state of Illinois is a law enforcement office, too, and that office is sometimes involved in appellate matters that come out of this court.

BY MR. MCKOWN: What is appellate matters?

BY THE COURT: It means review, court of review, a higher court. This court would review. Now, it's possible that this case could wind up with the Attorney General's Office representing the People, which would be adverse to your interests. Do you see?

BY MR. MCKOWN: Uh huh.

BY THE COURT: The possibility is probably very slender, but still there is that possibility. Now, that makes the conflict, you see?

BY MR. MCKOWN: Uh huh.

BY THE COURT: Do you see the conflict?

(MR. MCKOWN NODS HIS HEAD.)

BY THE COURT: Now, what's he's asking is that you waive that conflict and for him to represent you.

BY MR. MCKOWN: Yeah.

BY THE COURT: Have you got any questions?

BY MR. MCKOWN: No, sir.

BY THE COURT: Do you want him to represent you?

BY MR. MCKOWN: Yeah.

BY THE COURT: Or do you want another attorney?

BY MR. MCKOWN: I will let him represent me."

Thereafter, three defendants were tried jointly. The State adduced the testimony of the victim and two occurrence witnesses, and the three defendants each testified in their own defense. The victim stated that the defendants provoked a brawl while the defendants testified that the victim started the melee when, without provocation, he kicked the defendant's brother in the stomach. Thereafter, the jury returned a guilty verdict against defendant McKown and acquitted his two co-defendants.

On appeal, the defendant asserts (1) that his retained counsel had a conflict of interest which requires no demonstration of prejudice to the defendant and (2) that the purported waiver was not made knowingly and intelligently.

Since *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, the Illinois courts have applied, at least in nonmultiple representation situations, a per se rule to conflicts of interest in criminal cases. According to *Stoval* and its progeny, once a conflict of interest is established on the part of defense counsel at the time of trial, the defendant was denied effective assistance of counsel, and reversal is automatic without any demonstration of prejudice to the defendant. See, *e.g., People v. Meyers* (1970), 46 Ill. 2d 149, 263 N.E.2d 81; *People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67; *People v. Arreguin* (1981), 92 Ill. App. 3d 899, 416 N.E.2d 402.

The Illinois Supreme Court has likewise applied the per se rule to claims of conflict of interest based upon certain relationships between defense counsel and the prosecution. In *People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569, for example, defense counsel formerly was a member of the State's Attorney's office and had appeared for the prosecution several times in the defendant's case before leaving to represent the defendant. The supreme court reversed the defendant's conviction entered on his negotiated plea because of the possibility that counsel might have been reluctant to attack portions of the prosecution's case for which he was responsible. As in *Stoval*, the defendant in *Kester* was not required to show that the conflict actually caused prejudice to him.

More recently, the per se rule was applied in *People v. Fife* (1979), 76 Ill. 2d 418, 392 N.E.2d 1345, which found a disqualifying conflict of

interest where an appointed defense counsel was also employed as a special assistant Attorney General for workman's compensation litigation. Referring to the subliminal pressures created by the hostility of interests between the Attorney General's office and the defendant, the *Fife* court declared that:

"[A] conflict of interest exists where defense counsel is a special assistant Attorney General, even though limited to specified non-criminal work, *and* his client in a criminal case is inadequately informed of the affiliation with the Attorney General *and* fails to effect a knowing and intelligent waiver. In such circumstances, actual prejudice need not be shown. * * *.

We are concerned about the possible, perhaps subliminal pressure a defense counsel who is also a special assistant for workmen's compensation cases might receive from the Attorney General's office, but we believe that problem is nullified or significantly lessened by complete and *effective disclosure*, by effective, knowledgeable waiver, and by the fact that special assistants are engaged in duties of a noncriminal nature and of specifically defined scope, wholly unrelated to their private employment. [Citations.]

Finally, there is no question that our holding is applicable to those cases in which a member of the same law firm has an affiliation with the Attorney General while another member represents a criminal defendant." (Emphasis added.) *People v. Fife* (1979), 76 Ill. 2d 418, 424-25, 392 N.E.2d 1345, 1348.

We find the *Fife* rule applies directly to the case at bar and establishes a per se disqualifying conflict of interest. The fact that in *Fife* counsel was appointed, while here, Weber was retained is not significant. The United States Supreme Court in *Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708, abolished any distinction between retained and appointed counsel for the purpose of determining whether a conflict of interest impaired the defendant's sixth and fourteenth amendment rights to effective assistance of counsel.

The State urges this court to reject the Illinois per se approach and adopt the recent holding of the United States Supreme Court in *Cuyler v. Sullivan. Sullivan* requires a defendant to demonstrate that an actual conflict of interest adversely affected his counsel's performance in order to establish a sixth amendment violation, and thus holds that our per se rule is not constitutionally mandated. Nonetheless, in Illinois the per se rule is still the law. *Cf. People v. Lewis* (1981), 88 Ill. 2d 429, 430 N.E.2d 994.

Having established the existence of a per se conflict of interest, in addition to considering whether the disclosure was effective, we now must determine whether the defendant effected a knowing and intelligent

waiver of that conflict. *People v. Fife* (1979), 76 Ill. 2d 418, 392 N.E.2d 1345.

In *People v. Robinson* (1979), 79 Ill. 2d 147, 402 N.E.2d 157, the supreme court observed that the trial court thoroughly informed Robinson of the circumstances producing the possible conflict and explained the potential harm that could result to his defense. The court distinguished *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, where the trial court made no effort to explain how the conflict might subtlely affect the vigor of counsel's representation, and then concluded:

> "Defendant appears to have understood the problem and freely chose to proceed with an assistant public defender as his counsel. Assuming the possibility of conflict, in view of its attenuation here, defendant's decision does not appear imprudent." (79 Ill. 2d 147, 166, 402 N.E.2d 157, 166.)

On the basis of the satisfactory written and oral waivers by defendant in the case at bar, we conclude that, similar to *Robinson*, defendant appears to have understood the problem. The written waiver signed by McKown states quite clearly that he understood that defense counsel had a commitment to seek enforcement of the law, and he was further advised by the trial judge as to the remote possibility that defense counsel's firm might be called upon to work for the prosecution upon appeal. We find he waived his right to conflict-free counsel both in writing and orally. At some point, a defendant must accept the consequences of his words and actions which purport to waive his rights. (*People v. Duncan* (1981), 97 Ill. App. 3d 896, 424 N.E.2d 67.) We believe that point was reached in this case when defendant was given a second chance to reject Mr. Weber as his counsel, and he again indicated that he wanted to retain Mr. Weber. We hold defendant's waiver to have been effective.

Accordingly, we affirm the judgment of conviction and the sentence of the Circuit Court of Fulton County.

Affirmed.

STOUDER and ALLOY, JJ., concur.