THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHASTITY L. DEASON, Defendant-Appellant.

Fourth District   No. 4—91—0291

Opinion filed December 13, 1991.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Tony Lee, State's Attorney, of Paxton (Kenneth R. Boyle, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

A jury convicted defendant, Chastity L. Deason, of attempt (murder) (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4, 9—1), home invasion (Ill. Rev. Stat. 1989, ch. 38, par. 12—11), and armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—2), and she was sentenced to three concurrent terms of 18 years in prison. Defendant appeals, arguing (1) she was improperly convicted of attempt (murder) because (a) at the time of the alleged offense, the offense of murder no longer existed, having been replaced with first degree murder, and (b) the jury was not prop-

erly instructed that the specific intent to kill the victim was a necessary element of attempt (murder); (2) the trial court denied her a fair trial by erroneously excluding certain statements made by her codefendant; and (3) the trial court considered improper factors when it determined the sentences to impose upon her. We affirm in part, reverse in part, and remand with directions.

## I. FACTS

Because defendant does not challenge the sufficiency of the evidence to sustain her convictions, we will review the evidence only to the extent necessary to place her arguments on appeal in context.

On the evening of April 10, 1990, Mitchell Page, Jennifer Little, and defendant were present at Christina Hammock's home in Gibson City, Illinois. Defendant and Page asked to borrow Hammock's car "to go to talk to someone." Hammock agreed, and defendant and Page drove off in Hammock's car. Little, who was Page's pregnant girlfriend, remained at Hammock's house. Defendant and Page had previously discussed getting some money to help Little.

Defendant and Page drove to Lawrence Gordon's house. Page got out of the car and told defendant to pull the car into the driveway. She did so and then accompanied him to the back door of Gordon's residence, which was unlocked. Page entered first, carrying a baseball bat, and defendant followed him into the residence. Page told her to shine the flashlight, which she had brought into the residence, so that he could see. Page walked into the bedroom, while defendant stayed in the hallway between the bedroom and the kitchen. Defendant heard Gordon snoring in the bedroom, but she never went inside. She then heard something being hit with the baseball bat, and later described it as sounding "like someone hitting a large bag of fluid." Defendant looked into the bedroom and saw that Gordon's forehead was bloody. Page told her to find Gordon's pants, but she remained standing in the hallway. Page then found Gordon's pants, removed Gordon's checkbook and wallet, and said, "Let's go." Page pulled defendant out the back door, and they drove back to Hammock's house. In the car, Page discovered that Gordon's wallet contained $22. On the way back, they stopped at Page's mother's house, where Page left a note.

Upon their return to Hammock's house, defendant and Page asked Hammock to drive them to Danville, and she agreed. Hammock, Little, defendant, and Page then drove to Danville, where they spent the night. At Page's direction, Hammock drove to Danville on the back roads.

The next morning Hammock drove the group back to Champaign. En route, Page informed Hammock that the night before he went to the house of an old man where he thought there would be $20,000 in the basement. Page said that because the old man had a shotgun, Page hit him in the head with a baseball bat, and Page now thought that the man was dead. While still en route to Champaign, defendant told Hammock that Page had ordered her out of the car and into the house when they arrived at the old man's residence.

After driving to Champaign, Page asked to borrow the car from Hammock, and she agreed. Page, Little, and defendant then drove off in Hammock's car and never returned it. The three of them drove around Champaign to various banks trying to cash a check from Gordon's checkbook. According to defendant, Page was ordering her to try to cash a check because only she had any identification. However, no Champaign bank would cash the check. Later, they drove to Farmer City, where defendant claimed Page threatened her if she would not again try to cash a check. This time she succeeded and cashed a check for $583.75. Defendant maintained she did so because she was afraid of Page. After cashing the check, defendant, Page, and Little drove south and were ultimately arrested in Mississippi a few days later.

As a result of being beaten by Page with the baseball bat, Gordon suffered extensive injuries to his brain, skull, eyes, cheekbones, nose, and jaw. His left optic nerve was severed. His medical treatment required his jaw to be wired shut and metal plates to be implanted in his head. His face received multiple sutures. He also lost a great deal of blood and needed to spend two weeks in the hospital and two more weeks at a rehabilitation center.

Defendant asserted the defense of compulsion (Ill. Rev. Stat. 1989, ch. 38, par. 7—11), and the trial court instructed the jury accordingly. The State's theory of the case was that defendant was accountable for Page's criminal behavior (Ill. Rev. Stat. 1989, ch. 38, par. 5—2), and the trial court instructed the jury on accountability.

## II. The Failure Of The State To Correctly Charge The Offense Of Attempt

The State charged defendant with attempt (murder) based upon the beating of Gordon with a baseball bat in April 1990. However, effective July 1, 1987, the offense of murder, as defined in section 9—1 of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1985, ch. 38, par. 9—1), ceased to exist. Instead, Public Act 84—1450 (Pub. Act 84—1450, eff. July 1, 1987 (1986 Ill. Laws 4221)) replaced murder in sec-

tion 9—1 of the Code with first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1). Based upon this statutory change, defendant argues that she was convicted of an offense—attempt (murder)—that no longer existed. Defendant argues that the State's misnaming of this offense is a fatal defect, which requires reversal of her conviction as a plain error. We disagree.

■■ We first note that defendant at the trial level did not challenge the information which charged her with attempt (murder). In *People v. Clay* (1988), 167 Ill. App. 3d 628, 634, 521 N.E.2d 243, 248, the court addressed a similar argument and wrote the following:

> "The sufficiency of an information *** which is attacked for the first time on appeal[] is not to be determined by whether its form follows precisely the provisions of the statute. (*People v. Gilmore* (1976), 63 Ill. 2d 23, 29[, 344 N.E.2d 456, 460].) Rather, the information or indictment is considered sufficient if it apprised the accused of the precise offense charged with sufficient specificity so that he could prepare his defense and bar future prosecutions arising out of the same conduct."

In the present case, that standard has clearly been met. The only change in section 9—1 of the Code brought about by Public Act 84—1450 was to the title of the offense, changing it from "murder" to "first degree murder." Substantively, the offense of murder was defined no differently than is the offense of first degree murder. The significant change caused by Public Act 84—1450 was to section 9—2 of the Code, wherein voluntary manslaughter (see Ill. Rev. Stat. 1985, ch. 38, par. 9—2) became second degree murder (see Ill. Rev. Stat. 1987, ch. 38, par. 9—2). (For a more extensive discussion of the nature of these changes, see *People v. Newbern* (1991), 219 Ill. App. 3d 333.) However, the present case did not involve either second degree murder or attempt (second degree murder). The record shows that the trial court and both counsel fully understood the present case involved a charge of attempt (murder) under section 9—1 of the Code, even though no one referred to this offense by its correct title of attempt (first degree murder).

In support of her argument that her conviction for attempt (murder) must be reversed, defendant cites *People v. Wasson* (1988), 175 Ill. App. 3d 851, 530 N.E.2d 527, a decision of this court which held that defendant's conviction of aggravated criminal sexual assault could not stand because he was charged with committing that offense before the offense was enacted. (*Wasson*, 175 Ill. App. 3d at 855, 530 N.E.2d at 529.) However, as the State correctly points out, *Wasson* is distinguishable because aggravated criminal sexual assault, as added

to the Code by Public Act 83—1067 (Pub. Act 83—1067, eff. July 1, 1984 (1983 Ill. Laws 7251)), was an entirely new offense. Accordingly, we reject defendant's argument that she was somehow hindered in preparing her defense because she was forced to answer to a charge for which she could not have been lawfully convicted.

### III. THE FAILURE OF THE ATTEMPT (MURDER) INSTRUCTIONS TO REQUIRE THE JURY TO FIND THE SPECIFIC INTENT TO KILL

■ In pertinent part, the jury was instructed that in order to convict defendant of attempt (murder), it had to find beyond a reasonable doubt that defendant, or one for whose conduct she was legally responsible, "performed an act which constituted a substantial step toward the commission of the offense of murder *** and *** did so with intent to commit the offense of murder." The trial court also instructed the jury as follows: "A person commits the offense of murder when he kills an individual if, in performing the acts which caused the death, he intends to kill or do great bodily harm to that individual or another." Defendant argues that these instructions were erroneous, and we agree.

In *People v. Velasco* (1989), 184 Ill. App. 3d 618, 540 N.E.2d 521, the court thoroughly analyzed this issue and wrote the following:

"Our supreme court has unequivocally held that specific intent to kill is an essential element of the offense of attempted murder and, correlatively, that a finding of nothing less than specific intent to kill will sustain a conviction for attempted murder. (*People v. Mitchell* (1984), 105 Ill. 2d 1, 473 N.E.2d [1270]; *People v. Jones* (1979), 81 Ill. 2d 1, 405 N.E.2d 343; *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28; *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888.) As the supreme court in *Jones* stated, '*[k]nowledge* [(emphasis in original)] *that the consequences of an accused's act may result in death (or grave bodily injury),* *** *is not enough; specific intent to kill is required* [(emphasis added)] [citation]. Both the indictment and the instructions must unambiguously reflect this.' *** *Jones*, 81 Ill. 2d at 8-9, 405 N.E.2d at 345.
***

Reviewing courts of this State have repeatedly stated that attempted murder instructions such as those given here, which include the full definition of murder (IPI Criminal 2d No. 7.01), are erroneous. [Citations to *13* cases omitted.] Nevertheless, as the volume of cases in which this issue is presented demonstrates, attempted murder instructions which erroneously in-

clude the full definitional murder language inexplicably continue to be given." (Emphasis added unless otherwise indicated.) *Velasco*, 184 Ill. App. 3d at 632-33, 540 N.E.2d at 530.

The State argues that defendant has waived this issue by failing to object at trial to any of these instructions. In response, defendant argues that her failure to raise this issue at trial does not waive the issue on appeal because the error constitutes plain error under Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). In *People v. Whitehead* (1987), 116 Ill. 2d 425, 447-48, 508 N.E.2d 687, 695, the supreme court held that the plain error rule permits a court of review to consider an issue that ordinarily would be deemed waived only when (1) the evidence is closely balanced, or (2) the error was of such magnitude that the accused was denied a fair trial. In our judgment, at least the second—if not both of these criteria—is present in this case.

Prior to defendant's trial, Page pleaded guilty to attempt (murder) and was sentenced to 20 years in prison. Although the trial court ordered Page brought from prison to the courthouse so that he could testify at defendant's trial, neither the State nor defendant elected to put him on the witness stand. Thus, the only evidence addressing Page's specific intent to kill Gordon consists of the following: (1) the inferences the jury may draw from the blows Page struck and the weapon he used; and (2) any pertinent statements made by Page as recounted by defendant, Hammock, or Little.

Regarding the first category of evidence, the record shows that Page administered a vicious beating of Gordon, striking repeated blows with a baseball bat on the face and head of a sleeping, elderly man. However, we do not find Page's conduct to conclusively establish—that is, so that a trier of fact could not conclude otherwise—that he intended to kill Gordon, as opposed to his performing acts knowing that they would cause great bodily harm to Gordon. (See Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(1).) Furthermore, a jury could conclude that Page's beating of Gordon with a baseball bat—even a beating as severe as this—would not be certain to cause the death of the victim, and therefore would be less indicative of the certainty of Page's intent to cause death than would have been Page's use of a gun to shoot Gordon or a knife to stab him. (See *People v. Mitchell* (1991), 209 Ill. App. 3d 562, 569, 568 N.E.2d 292, 297 (the very fact of firing a gun at another supports the conclusion that the person doing so acted with an intent to kill).) We contrast the facts in the present case with those in *Mitchell* and hold that beating another person with a

baseball bat does not have nearly the evidentiary value of an intent to kill that firing a gun at a person does.

Regarding the second category of evidence addressing Page's intent, we find no testimony in this record wherein Hammock, Little, or defendant relates that Page told any of them, either before or after his beating of Gordon, that he intended to kill Gordon. The statement of Page that comes closest to explaining Page's actions is when he told Hammock, Little, and defendant, as they drove to Champaign, that he hit the old man in the head with a baseball bat because he thought the old man had a shotgun.

As discussed in *Velasco*, two lines of analysis have developed in attempt (murder) cases in which an erroneous instruction has been given to the jury but the defendant failed to object at trial. (*Velasco*, 184 Ill. App. 3d at 633-34, 540 N.E.2d at 530-31.) The first line of cases holds that because intent is an essential element of the State's case, giving an erroneous instruction with respect to the mental state required to commit attempt (murder) deprives the jury of the legal tools necessary to determine defendant's guilt or innocence. Courts following this line of cases have held the erroneous instruction to be plain error and have reversed the convictions without extensive consideration of the evidence. See *Velasco*, 184 Ill. App. 3d at 633, 540 N.E.2d at 530-31.

The other line of cases holds that where a defendant's intent is not at issue or is blatantly evident from the facts, the defendant's attempt (murder) conviction can be sustained because the jury could not reasonably have found defendant not guilty. The courts following this line of cases have thus held that the giving of the incorrect instruction was harmless error. *Velasco*, 184 Ill. App. 3d at 633-34, 540 N.E.2d at 531.

The record in the present case does not clearly establish why Page thought it necessary to beat Gordon as severely as he did. Although the circumstances surrounding that beating are sufficient to *permit* the jury to conclude that Page intended to kill Gordon, they are hardly so overwhelming as to *compel* that conclusion.

In our judgment, the present case is not one in which this court can conclude that the jury could not reasonably have found defendant not guilty. The evidence of Page's intent to kill Gordon was not overwhelming.

The State further argues that the trial court's giving of these instructions does not constitute plain error because defendant was tried on the theory of accountability. Because defendant's guilt was premised upon her accountability for Page's criminal conduct, the State is

correct that the "common design rule," incorporated within section 5—2 of the Code, applies. (Ill. Rev. Stat. 1989, ch. 38, par. 5—2.) That rule provides that where two or more people engage in a common criminal design, any acts in furtherance thereof committed by one party are considered to be the acts of all parties to the common design and all parties are accountable for those acts. (See *People v. Terry* (1984), 99 Ill. 2d 508, 514, 460 N.E.2d 746, 749; *People v. Taylor* (1990), 199 Ill. App. 3d 933, 940, 557 N.E.2d 917, 922.) In this case, the jury could find the evidence to be sufficient under the "common design rule" to find defendant accountable for all of Page's criminal behavior at Gordon's residence. (See *People v. Bell* (1991), 209 Ill. App. 3d 438, 446, 568 N.E.2d 238, 243 (State did not have to prove defendant had concurrent specific intent to aid or abet codefendant in the attempt (murders) of the victims; all State had to prove was that defendant aided codefendant in the commission of the contemporaneous armed robberies).) As we see it, the problem in the present case is not with the evidence demonstrating defendant's accountability; instead, the problem is with the sufficiency of the evidence demonstrating Page's specific intent to kill Gordon, as required to convict him of attempt (murder) or to convict defendant of attempt (murder) on the theory that she is accountable for Page's criminal conduct.

We recognize that the State seeks to overcome this issue by pointing out that defendant has conceded in her brief before this court that the "actions [of Page] disclosed the specific intent to kill." However, this unexplained concession by defendant does not bind this court as we review this record.

For the reasons stated, the trial court's failure to properly instruct the jury on the definition of attempt (murder) is plain error requiring reversal of defendant's conviction of attempt (murder).

## IV. EVIDENTIARY ISSUES

■ Defendant contends that the trial court improperly restricted her efforts to get certain statements of Page before the jury. The first statement in question was when Page told defendant, Hammock, and Little in Danville a few hours after the incident at the Gordon residence that, "I think I killed him." The second statement, contained in a note Page wrote to his mother and left at her home, could be loosely viewed as being to the same effect as the first statement. The trial court kept out both of these statements on the ground that they were inadmissible hearsay. Defendant argues that both statements are admissible as declarations against Page's penal interest. However, we need not resolve this issue.

First, we find these statements to have no relevancy to any defense that defendant asserted. The best defendant can do in arguing the statements' relevancy is to claim that they show Page never referred to "they" as committing the crime against Gordon, but only referred to "he." However, given the State's theory that defendant was accountable for Page's behavior, there is nothing exculpatory of defendant in either of these statements, and both are fully consistent with defendant's guilt.

Second, as defendant concedes in her brief, the jury heard testimony about Page's mentioning to defendant, Hammock, and Little in the car after the incident at Gordon's residence that, "I think I killed him." Thus, to the extent that this statement had any probative value, it was already before the jury. Essentially, defendant is arguing that the jury should have heard the statement again. Based upon our earlier analysis of both these statements, we find defendant's argument groundless.

Third, defendant's argument regarding these statements is addressed primarily to her conviction of attempt (murder). However, because we have already determined that defendant's conviction of attempt (murder) is to be reversed, defendant's argument on this point has been mooted.

## V. Sentencing Issues

The three offenses of which defendant was convicted—attempt (murder), home invasion, and armed robbery—are all Class X felonies, each carrying a possible sentence of not less than 6 years nor more than 30 years in prison. (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(c)(1), 12—11(c), 18—2(b), 1005—8—1(a)(3).) As stated earlier, defendant was sentenced to 18 years in prison on each of these convictions, with each sentence to run concurrently to the others. On appeal, defendant argues that the trial court considered improper factors in imposing this sentence, thereby abusing its discretion and requiring that a new sentencing hearing be held.

■ Defendant argues that the trial court "was disturbed" by her evidence in mitigation that she had been sexually assaulted but had not reported the crimes. Defendant also maintains that the trial court "challenged" defendant to justify its not imposing the maximum 30-year sentence. Although we do not believe the trial court was biased against defendant as it sentenced her because it did not approve of how she handled the sexual abuse she claimed she had been subjected to, we can see how the tone of the trial court's questioning, coupled with its reference to imposing a 30-year sentence, makes this argu-

ment colorable. However, we need not address defendant's argument further because of our decision to reverse defendant's conviction for attempt (murder). We do not believe these issues likely to arise at resentencing.

Accordingly, we remand for further proceedings on the attempt (murder) charge and vacate defendant's 18-year sentences on her convictions of armed robbery and home invasion.

If, on remand, the State elects to retry defendant on the attempt (murder) charge (which should then be corrected on retrial to a charge of attempt (first degree murder)) and defendant is convicted of attempt (first degree murder), then the trial court can sentence defendant anew on all three Class X convictions. On the other hand, if, on remand, either defendant is retried on attempt (first degree murder) and acquitted or the State elects not to try her again on that charge, then the trial court can sentence defendant anew on the two remaining Class X convictions of armed robbery and home invasion.

Because of our uncertainty over the extent to which defendant's conviction of attempt (murder) may have been a significant factor in the court's determination of an appropriate sentence in this case, we believe the best course for us to take is to give the trial court an opportunity to resentence defendant without that conviction being part of defendant's record (assuming that upon remand defendant is not convicted of that offense or the State chooses not to retry her). In taking this action, however, we should not be understood as agreeing with defendant's claim that the 18-year concurrent sentences previously imposed were improper or excessive.

## IV. CONCLUSION

For the reasons stated, we affirm defendant's convictions of armed robbery and home invasion and vacate her sentences for those convictions; we reverse defendant's conviction of attempt (murder); and we remand this cause for further proceedings consistent with the views expressed herein.

Affirmed in part; reversed in part, sentences vacated, and cause remanded with directions.

GREEN, P.J., and KNECHT, J., concur.