616 N.E.2d 1256 (1993)
247 Ill. App.3d 120
186 Ill.Dec. 624
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Gerald JETER and Anthony Thomas, Defendants-Appellants.
Nos. 1-89-1073, 1-89-1238.
Appellate Court of Illinois, First District, Sixth Division.
May 14, 1993.
*1258 Office of the State Appellate Defender, Chicago (Maria A. Harrigan, Asst. Appellate Defender, and Michael J. Pelletier, Deputy Defender, of counsel), for defendants-appellants.
Jack O'Malley, State's Atty. of Cook County, Chicago (Renee Goldfarb, William D. Carroll, Asst. State's Attys., and Celeste Stewart Stack, Sp. Asst. State's Atty., of counsel), for plaintiff-appellee.
*1257 Justice GIANNIS delivered the opinion of the court:
Defendants, Gerald Jeter and Anthony Thomas, were each charged with two counts of murder (Ill.Rev.Stat.1987, ch. 38, pars. 9-1(a)(1), 9-1(a)(2)) in connection with the killing of James Atkins and with two counts of attempt (murder) (Ill.Rev.Stat. 1987, ch. 38, par. 8-4) in connection with the respective shootings of Raymond Spain and Darryl Davis. After separate but simultaneous jury trials, defendant Jeter was convicted of the murder of James Atkins and the attempt (murder) of Raymond Spain. Defendant Thomas was convicted of the murder of James Atkins and the attempt (murder) of Raymond Spain and Darryl Davis. The trial court subsequently vacated defendant Jeter's murder conviction and sentenced him to a 30 year penitentiary term on the attempt (murder) conviction. Defendant Thomas was sentenced to consecutive penitentiary terms of 40 years for his murder conviction and 20 year terms for each of his attempt (murder) convictions (a total term of 80 years).
Defendants raise the following issues for review: (1) whether the jury instructions given for attempt (murder) were improper; (2) whether the State proved that defendants had the specific intent required to convict for attempt (murder); (3) whether closing arguments made by the prosecution in defendant Jeter's trial requires reversal; (4) whether the trial court abused its discretion in sentencing defendants by failing to consider rehabilitative potential or by imposing excessive sentences; (5) whether the trial court abused its discretion in sentencing defendant Thomas to consecutive sentences.
The background of this case involves a gang-related shooting which occurred on April 17, 1987. Evidence indicated that defendants, then members of the Black Gangster Disciples, began shooting into a group of eight people as they exited an elevator in the lobby of a Chicago housing project. Three of the victims' group were U.S. military personnel visiting Chicago on a four day leave. One person in the group, an army soldier, died from his injuries; two others were seriously wounded. At the time of the offense, defendant Jeter was 16 years old; defendant Thomas was 15.
Defendants were tried separately but simultaneously to separate juries. The only evidence not heard by both juries was testimony concerning statements given to police.
As part of the State's case against defendant Thomas, police detective Szudarski testified as to a statement given by defendant Thomas shortly after he had been taken into custody. In this statement Thomas related that on the night of the shooting he was with other members of the Black Gangster Disciples street gang at the scene of the shooting. He further stated that he owned a .32 caliber revolver which he was carrying in his pocket. At approximately 12:30 a.m. he saw a group of people enter the building. Included in the group was a man known as "Rink" whom Thomas knew to be a Dell Viking street gang member. After watching Rink enter the elevator, Thomas told other members of his group that if Rink came down and started trouble that Thomas would shoot him. Approximately an hour later, when the victims' group returned to the lobby, Thomas removed his gun from his pocket and, after hearing gunshots, opened fire into the group of people. Detective Szudarski also testified that, after shooting into Rink's group, Thomas admitted going to a nearby building and dropping his gun down a garbage chute. This testimony was corroborated by youth officer Mohrs.
Defendant Thomas testified on his own behalf. He stated that he was at the scene of the shooting that evening because he *1259 wanted to go to a party. He denied having a gun and indicated that he had ended his affiliation with the Black Gangster Disciples in 1986. While he admitted making a statement to police, he denied its truthfulness and indicated that he made the statement only because he was scared the police would beat him up.
As part of the State's case against defendant Jeter, youth officer Mohrs testified as to a statement given by Jeter while in custody. According to Mohrs, Jeter admitted that he was a member of the Black Gangster Disciples and that he had met six other members at the scene of the shooting on April 17, 1987. Jeter then told Mohrs that one of the group, Anthony Williams, indicated that he had seen a group of people entering the building and that three of these people were Dell Vikings. Williams then gave Jeter a .32 caliber gun and told him to wait for the group to come back down. Jeter also stated that after the victims' group returned to the first floor and opened fire, he returned two shots, gave the gun back to Williams and ran. Officer Leighton corroborated this testimony. Jeter did not testify on his own behalf. In closing, his attorney admitted that Jeter had been at the scene and had shot twice, but argued self-defense.
Testimony of witnesses established that initial gunshots were fired at the group from inside the building as they walked away from the building elevator. As the group ran from the building, subsequent shots were fired from outside. Testimony indicated that as many as 30 shots were fired during the attack. Two of the victims were shot from behind, a third in the chest. Defendant Thomas was identified by several witnesses as having fired a gun into the group from inside the building.
Defendants first argue that the trial court erroneously instructed the juries that they could find defendants guilty of attempt (murder) without finding that they had the specific intent to kill Darryl Davis and Raymond Spain. The supreme court has held that a finding of specific intent to kill is required for conviction of attempt (murder). People v. Jones (1979), 81 Ill.2d 1, 39 Ill.Dec. 590, 405 N.E.2d 343; People v. Harris (1978), 72 Ill.2d 16, 17 Ill.Dec. 838, 377 N.E.2d 28.
The trial court gave the following instruction for attempt (murder) to the Jeter jury:
"A person commits the offense of attempt when he, with intent to commit the offense of murder does any act which constitutes a substantial step toward the commission of the offense of murder.
The offense attempted need not have been committed." (Illinois Pattern Jury Instructions, Criminal, No. 6.05 (2d ed. 1981) (hereinafter IPI Criminal 2d).)
After giving this instruction the trial court also instructed the jury:
"To sustain the charge of attempt, the State must prove the following proposition:

First: That the defendant, or one for whose conduct he is legally responsible, performed an act which constituted a substantial step toward the commission of the offense of attempt murder against [Raymond Spain/Darryl Davis]; and

Second: That the defendant, or one for whose conduct he is legally responsible, did so, with intent to commit the offense of murder against [Raymond Spain/Darryl Davis]; and

Third: That the defendant, or one for whose conduct he is legally responsible, was not justified in using the force which he used." (IPI Criminal 2d No. 6.07.)
With regard to the charge of murder, the trial court instructed:
"A person commits the offense of murder when he kills an individual without lawful justification if, in performing the acts which cause death,
he intends to kill or do great bodily harm to that individual or another; or
he knows that such acts will cause death to that individual or another; or
he knows that such acts create a strong probability of death or great bodily harm to that individual or another; *1260 and the person was not justified in using the force which he used and did not act under an unreasonable belief that circumstances existed which would have justified the killing." (IPI Criminal 2d No. 7.01.)
The trial court instructed the Thomas jury in a similar manner, absent the justification language.
It is well settled that these instructions are erroneous because they do not unambiguously reflect the fact that attempt (murder) requires a specific intent to kill. Instead, when the murder and attempt (murder) instructions are used together, they improperly leave open the possibility that a conviction could be based solely upon a showing that the defendants intended only to do great bodily harm or that defendants acted with mere knowledge that their acts would create a strong probability of death or great bodily harm. Despite the large number of reported cases which discuss this problem, these instructions continue to be used by our trial courts. (See e.g., People v. Jones (1979), 81 Ill.2d 1, 39 Ill.Dec. 590, 405 N.E.2d 343; People v. Harris (1978), 72 Ill.2d 16, 17 Ill.Dec. 838, 377 N.E.2d 28; People v. Trinkle (1977), 68 Ill.2d 198, 12 Ill.Dec. 181, 369 N.E.2d 888; People v. Carvajal (1993), 241 Ill.App.3d 886, 182 Ill.Dec. 105, 609 N.E.2d 408; People v. Mendez (1991), 221 Ill. App.3d 868, 164 Ill.Dec. 321, 582 N.E.2d 1265; People v. Deason (1991), 223 Ill. App.3d 320, 165 Ill.Dec. 395, 584 N.E.2d 829; People v. Velasco (1989), 184 Ill. App.3d 618, 132 Ill.Dec. 781, 540 N.E.2d 521; People v. Fields (1988), 170 Ill.App.3d 1, 120 Ill.Dec. 285, 523 N.E.2d 1196; People v. Page (1987), 163 Ill.App.3d 959, 115 Ill.Dec. 15, 516 N.E.2d 1371; People v. Lincoln (1987), 157 Ill.App.3d 700, 109 Ill. Dec. 958, 510 N.E.2d 1026; People v. Cloyd (1987), 152 Ill.App.3d 50, 105 Ill.Dec. 257, 504 N.E.2d 126; People v. Jaffe (1986), 145 Ill.App.3d 840, 97 Ill.Dec. 793, 493 N.E.2d 600; People v. Kraft (1985), 133 Ill.App.3d 294, 88 Ill.Dec. 546, 478 N.E.2d 1154; People v. Smith (1984), 127 Ill.App.3d 622, 83 Ill.Dec. 27, 469 N.E.2d 634; People v. McDaniel (1984), 125 Ill.App.3d 694, 81 Ill. Dec. 76, 466 N.E.2d 662.) Where a defendant's intent to kill is not at issue or is blatantly evident, however, such instructions, though error, have been held to be harmless. See e.g., Jones, 81 Ill.2d at 9, 39 Ill.Dec. 590, 405 N.E.2d 343; Carvajal, 241 Ill.2d at 895-96, 182 Ill.Dec. 105, 609 N.E.2d 408; Velasco, 184 Ill.App.3d at 633-34, 132 Ill.Dec. 781, 540 N.E.2d 521; Page, 163 Ill.App.3d at 972, 115 Ill.Dec. 15, 516 N.E.2d 1371; Cloyd, 152 Ill.App.3d at 54-55, 105 Ill.Dec. 257, 504 N.E.2d 126; Smith, 127 Ill.App.3d at 634, 83 Ill.Dec. 27, 469 N.E.2d 634.
Initially, the State claims that this issue has been waived by the failure of both defendants to tender appropriate instructions to the trial court and by their failure to include this issue in their post-trial motions. (People v. Solis (1991), 216 Ill.App.3d 11, 159 Ill.Dec. 451, 576 N.E.2d 120.) Indeed, in defendant Jeter's case it was Jeter's own attorney who tendered the instructions which he now seeks to challenge. Defendants respond by arguing plain error (134 Ill.2d R. 615(a)). As the State contends, however, the waiver question need not be addressed as the error was harmless.
An instructional error may be found to be harmless when it is clear beyond a reasonable doubt that the error did not contribute to the defendant's conviction. (People v. Olinger (1986), 112 Ill.2d 324, 97 Ill.Dec. 772, 493 N.E.2d 579.) The evidence in this case overwhelmingly indicated that both defendants associated with the Black Gangster Disciples street gang and that they participated in an ambush-shooting of a group of people whom they believed to be connected with an opposing gang. Defendant Thomas fired from inside the building's lobby; defendant Jeter from outside of the building as the victims attempted to run to safety.
The evidence was uncontroverted that defendant Jeter accepted a gun from an acquaintance at the scene of the crime which he used to shoot twice toward the victims' group. While Jeter claimed self-defense, his decision to remain in the project building and wait for the victims' *1261 group is inconsistent with such a claim. In addition, none of the evidence presented at trial substantiated his claim that the victims' group was armed. Indeed, two of the victims were shot in the back. Similarly, defendant Thomas first admitted threatening to shoot Rink, a member of the victims' group, as well as participating in the attack. While Thomas denied at trial the truth of his in-custody confession, he was identified by several witnesses as one of the group who fired into the crowd.
One who fires a gun toward another with malice or with total disregard of human life may be convicted of attempt (murder). (People v. Carvajal (1993), 241 Ill.App.3d 886, 182 Ill.Dec. 105, 609 N.E.2d 408; People v. Mendez (1991), 221 Ill. App.3d 868, 164 Ill.Dec. 321, 582 N.E.2d 1265; People v. Smith (1984), 127 Ill. App.3d 622, 83 Ill.Dec. 27, 469 N.E.2d 634.) Here, the required specific intent to kill may be inferred from the evidence which showed defendants believed members of a rival gang were in the building, that they and several others armed themselves with deadly weapons, waited for the victims to emerge from the elevator, fired into the victims' group and then fled. Defendants' attempt to characterize this slaughter as a "random shooting incident" lacks candor. While the instructions read to the jury in this case should have indicated to the jury that they may not convict of attempt (murder) absent proof of a specific intent to kill, the lack of such an instruction under such facts amounts to harmless error. People v. Carvajal (1993), 241 Ill.App.3d 886, 182 Ill.Dec. 105, 609 N.E.2d 408; People v. Mendez (1991), 221 Ill.App.3d 868, 164 Ill. Dec. 321, 582 N.E.2d 1265; People v. Smith (1984), 127 Ill.App.3d 622, 83 Ill.Dec. 27, 469 N.E.2d 634.
Defendants also argue that the State failed to offer evidence sufficient for the jury to conclude beyond a reasonable doubt that they acted with the requisite specific intent. (See People v. Koshiol (1970), 45 Ill.2d 573, 262 N.E.2d 446.) In considering such claims, however, all evidence is considered in the light most favorable to the prosecution. (People v. Schorle (1990), 206 Ill.App.3d 748, 151 Ill.Dec. 813, 565 N.E.2d 84.) As is evident from the above discussion, the jury in this case had more than sufficient evidence to conclude that defendants had the specific intent to kill their victims. Defendants arguments are therefore without merit.
Defendant Jeter next contends that he was denied a fair trial when the State argued facts not in evidence. Specifically, he contends that comments made concerning where he was positioned during the shooting were not based on the evidence and unfairly undermined his claim of self-defense.
It is uncontested that Jeter was waiting for the victims when they exited the elevator as this evidence was in Jeter's statement which he adopted at trial in support of his claim of self-defense. Also evidenced by his own statement, Jeter was positioned near a "hallway" into which the victims ran in their an attempt to escape gunfire. Witnesses from the victims' group testified that their assailants were positioned in the hallway and outside the building. One described the area as a breezeway and another related that when a person leaves the building he or she remains underneath the building as it hangs over a sidewalk area. Significantly, one of the witnesses stated that an unidentified member of Jeter's group shot at him from behind some poles.
This evidence prompted the prosecutor to make the following comments during closing:
MR. SABATINI [Assistant State's Attorney]: "And ladies and gentlemen, I submit to you that it was at this point that Anthony Williams, a leader of the Disciples, planned this assassination.
You can see this in defendant's statement. You could see this because at this point Anthony Williams, the leader of the Disciples, took a .32 caliber revolver and handed it to this guy right here, the defendant Gerald Jeter. And then he positioned the defendant. Now, though the defendant does not specifically say where he was positioned. Well, we *1262 could reasonably infer he was one of the persons"
MR. THOMAS [Defendant's counsel]: "I'll object to that he was positioned anywhere."
THE COURT: "Overruled."
MR. SABATINI: "He was one of the persons that was positioned outside the door behind the pillars.
After all, you heard the testimony of the surviving witnesses from that elevator and they told you who was shooting from behind them, that being Anthony Thomas and Lavance Parsons.
So the defendant was among these [sic] group of people who were behind the pillars."
MR. THOMAS: "Object to that, Judge. There is no evidence he was behind a pillar."
THE COURT: "Overruled."
MR. SABATINI: "Immediately outside the door and he was one of these persons that was firing back at the people after they came out of the building."
* * * * * *
MR. SABATINI: "Now, ladies and gentlemen, just because this guy says that [he fired in self-defense] doesn't make it so. You are to look at that portion of his statement in light of all the evidence. In light of what the surviving witnesses told you from the witness stand.
Where is the self-defense? Who could have been shooting at this guy? He was secreted out there behind a pillar.
As a matter of fact"
MR. THOMAS: "Objection judge, that's not the evidence."
THE COURT: "Overruled."
MR. SABATINI: "As a matter of fact, the surviving witnesses told you the persons firing upon them from behind the pillar, they couldn't even see who they were." (Emphasis added.)
A prosecutor's comments cannot be labelled improper if those comments are based upon facts in the record or are reasonable inferences drawn from those facts. (People v. Bryant (1983), 94 Ill.2d 514, 69 Ill.Dec. 84, 447 N.E.2d 301.) Conversely, it is improper for a prosecutor to argue facts which are not based on the evidence. (People v. Monroe (1977), 66 Ill.2d 317, 5 Ill. Dec. 824, 362 N.E.2d 295; People v. Johnson (1987), 119 Ill.2d 119, 115 Ill.Dec. 575, 518 N.E.2d 100.) As the emphasized portion of the above argument makes clear, the prosecutor in this case did not mischaracterize the evidence, but rather, argued that Jeter's location during the assault could be reasonably inferred from the evidence presented. Indeed, the prosecution specifically reminded the jury that Jeter's statement to the police did not indicate where he was standing during the attack and that no one had specifically identified Jeter as standing behind a pillar as he shot. While defendant now argues that it is not a reasonable inference to conclude that defendant stood behind pillars as he shot, it is clear that there was sufficient evidence on this point for the State make such an argument, particularly in the frank manner in which the prosecution presented its theory. The cases cited by defendant Jeter in which the prosecution was found to have deliberately inflamed the jury are inapposite. Cf. People v. Nightengale (1986), 168 Ill. App.3d 968, 119 Ill.Dec. 668, 523 N.E.2d 136; People v. Fletcher (1987), 156 Ill. App.3d 405, 108 Ill.Dec. 929, 509 N.E.2d 625; People v. Young (1975), 33 Ill.App.3d 443, 337 N.E.2d 40.
Defendants next argue that the trial court abused its discretion in sentencing defendants. Defendant Thomas was convicted of one count of murder and two counts of attempt (murder). Defendant Jeter was convicted of one count of attempt (murder) after the trial court refused to enter judgment on the jury's murder conviction. A sentencing hearing was held prior to which the State supplemented defendant Thomas' presentence report to reflect a juvenile conviction for unlawful use of a weapon in September of 1986, for which Thomas received probation. The report was also supplemented with Thomas' juvenile felony conviction for burglary. *1263 The State then argued the facts of the case against defendant Thomas.
As to defendant Jeter, the State called a Chicago police officer to testify that on October 1, 1988, while Jeter was on bond for murder, Jeter was arrested for possessing a hand gun after the officer had heard gunshots and had seen Jeter walking with a group of teenagers. The officer recovered a .357 revolver near where Jeter was standing as well as empty casings. The gun had been stolen. Also in Jeter's sentencing hearing it was brought out that he had two juvenile convictions, one for battery in 1987 and one for unlawful use of weapons in 1986.
Defendant Thomas called Reverend Gordon McLean who testified that Thomas was a positive influence on other young men who were in Reverend McLean's counseling group for incarcerated youths. He testified that he felt Thomas had rehabilitative potential and that Thomas had expressed a desire to "move his life in a positive direction, to take advantage of what time he has to serve to get his education, to support his family and hopefully come out and be a good citizen." Defendant Thomas' attorney pointed out that Thomas was aware that he must be punished, and spoke about the possibility of rehabilitation.
Defendant Jeter's attorney stressed his client's young age and the fact that Jeter turned himself into police on the night of the shooting.
Just prior to sentencing defendants, the trial judge stated:
"First, I think it ought to be noted for the record that there has been references made by the attorneys, both the prosecution and for the defense, concerning punishment reflecting the possibility of rehabilitation. And I think it ought to be clear in everyone's mind that it is the Court's judgment that a penal institution is not a place where rehabilitation takes place.
A penal institution is a place where people who have been convicted of crimes are sent in execution of their sentence.
Early on it was considered that rehabilitative programs would take place during the incarceration period. But the Court is not aware of any American penal institution that lives up to the responsibility of having programs that cause people in their custody to change their ways, and come in convicted felons and go out as people who are not going to commit any further crimes.
Any rehabilitation that takes place under the circumstances in the American institutions comes about only as a result of the individual inmates affirming that after execution of that sentence that inmate is not going to be involved in any other anti-social or illegal activity. There is no rehabilitation * * * program that exists that is worthy of being named such in any of our penal institutions in the Court's judgment.
According[ly], I sentence these gentlemen today and it is not just them, but that has been my posture since I adopted this attitude, I will be sentencing purely on the basis of punishment. The sentence that I will impose will be punishment for the crimes that these men have been convicted of. And if rehabilitation takes place, fine.
Sit down.
It will be for punishment only."
In considering the propriety of punishment, a reviewing court must give great weight to the judgment of the trial court. (People v. La Pointe (1981), 88 Ill.2d 482, 492-93, 59 Ill.Dec. 59, 431 N.E.2d 344; People v. Perruquet (1977), 68 Ill.2d 149, 154, 11 Ill.Dec. 274, 368 N.E.2d 882; People v. Bergman (1984), 121 Ill.App.3d 100, 110, 76 Ill.Dec. 570, 458 N.E.2d 1370.) The imposition of a sentence is a matter of judicial discretion and, absent an abuse of this discretion, the sentence of the trial court may not be altered upon review. (Perruquet, 68 Ill.2d at 153, 11 Ill.Dec. 274, 368 N.E.2d 882.) Additionally, it is obvious that the trial judge is in a better position to determine proper punishment than is a court of review. Perruquet, 68 Ill.2d at 154, 11 Ill.Dec. 274, 368 N.E.2d 882; People *1264 v. Butler (1976), 64 Ill.2d 485, 490, 1 Ill.Dec. 204, 356 N.E.2d 330.
It is settled law, however, that a reasoned judgment as to a proper sentence must be based upon the particular facts and circumstances of each individual case. (Perruquet, 68 Ill.2d at 154, 11 Ill. Dec. 274, 368 N.E.2d 882; People v. Bolyard (1975), 61 Ill.2d 583, 589, 338 N.E.2d 168.) Such a judgment depends upon many factors, including the gravity of the offense and the circumstances of commission, the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, age, and criminal history. (Perruquet, 68 Ill.2d at 154, 11 Ill.Dec. 274, 368 N.E.2d 882; People v. Duncan (1981), 97 Ill.App.3d 896, 899, 53 Ill.Dec. 654, 424 N.E.2d 67.) The sentencing judge is charged with the difficult task of fashioning a sentence which would strike the appropriate balance between protection of society and rehabilitation of the offender. (People v. Cox (1980), 82 Ill.2d 268, 280, 45 Ill.Dec. 190, 412 N.E.2d 541; Bergman, 121 Ill.App.3d at 109, 76 Ill.Dec. 570, 458 N.E.2d 1370.) Thus, trial judges are compelled to consider each defendant's individual rehabilitative potential. Indeed, our own constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const.1970, art. I, § 11.) While this is not to say that the objective of restoring the offender to useful citizenship is to be accorded greater consideration than that which establishes the seriousness of the offense, (People v. Waud (1977), 69 Ill.2d 588, 596, 14 Ill.Dec. 870, 373 N.E.2d 1; Bergman, 121 Ill. App.3d at 109, 76 Ill.Dec. 570, 458 N.E.2d 1370), such concerns must be considered on a case by case basis.
Section 5-4-1 of the Unified Code of Corrections provides that in sentencing a defendant the court consider the evidence received at trial; consider any presentence reports; consider evidence in and information offered by the parties in aggravation and mitigation; hear argument as to sentencing alternatives; and afford the defendant the opportunity to make a statement in his own behalf. (Ill.Rev.Stat.1987, ch. 38, par. 1005-4-1(a).) In addition, this section directs the trial court to specify on the record the particular evidence, information, factors in mitigation and aggravation or other reason that led to his sentencing determination. (Ill.Rev.Stat.1987, ch. 38, par. 1005-4-1(c).) While the supreme court has held that this subsection may be waived, (People v. Davis (1982), 93 Ill.2d 155, 66 Ill.Dec. 294, 442 N.E.2d 855), the trial court's failure to put its reasons for sentencing in the record has been relied upon as a factor in considering whether there has been an abuse of discretion. People v. Coleman (1991), 212 Ill.App.3d 997, 1003-04, 157 Ill.Dec. 16, 571 N.E.2d 1035; People v. Rosa (1990), 206 Ill.App.3d 1074, 1084-85, 151 Ill.Dec. 950, 565 N.E.2d 221.
Our review of the record indicates that the trial court did not carefully weigh the evidence presented at defendants' sentencing hearing, but instead, sentenced defendants "for punishment only" based upon personal beliefs about the state of our prison system. The fact that the trial court failed to articulate the fact that he had considered the statutory factors before sentencing defendants supports this conclusion. We therefore vacate defendants' sentences and remand their cause for a new sentencing hearing in which the appropriate factors may be carefully considered.
Finally, because we vacate defendants' sentences, the questions of whether they are excessive or whether the consecutive sentences imposed upon defendant Thomas should run concurrently are moot. We note for the trial court on remand, however, that the supreme court has held that consecutive sentences should be imposed sparingly. (People v. O'Neal (1988), 125 Ill.2d 291, 126 Ill.Dec. 71, 531 N.E.2d 366.) We also point out that section 5-8-4(b) of the Unified Code of Corrections, as in effect at the time of defendants' offense, stated:
"The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of *1265 the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." (Ill. Rev.Stat.1987, ch. 38, par. 1005-8-4(b)).
While the supreme court has held that the above provision does not require the trial court to recite the language of the statute before imposing consecutive sentences (O'Neal (1988), 125 Ill.2d 291, 126 Ill.Dec. 71, 531 N.E.2d 366; People v. Pittman (1982), 93 Ill.2d 169, 66 Ill.Dec. 275, 442 N.E.2d 836), "the better practice is for the trial court to expressly find that consecutive sentences are necessary for the protection of the public." O'Neal, 125 Ill.2d at 299, 126 Ill.Dec. 71, 531 N.E.2d 366; Pittman, 93 Ill.2d at 178, 66 Ill.Dec. 275, 442 N.E.2d 836.
Accordingly, for the reasons expressed above, defendants convictions are affirmed. However, because we find the trial court abused its discretion in the manner in which it sentenced defendants, we remand for a new sentencing hearing consistent with this opinion.
Affirmed in part; vacated in part and remanded.
McNAMARA, P.J., and RAKOWSKI, J., concur.